Alright! United States Corps of Appeals for the 9th Circuit's Announcement Session. Please be seated. We're here for the in-bank argument in Karuk Tribe v. United States Forest Service. Good morning, Judge Gould. Good morning, Chief Judge Kuczynski. Are we coming through loud and clear? You are loud and clear, and you all look great. We can see and hear you just fine. Counsel ready? Okay. You may proceed. Good morning, Your Honors. My name is Roger Flynn, representing the Karuk Tribe of California. With me is Jeffrey Parsons, my co-counsel in the case. This case is about the failure of the United States Forest Service, Federal Land Management Agency, to consult with the Federal Wildlife Agencies directed by Congress with the enforcement of the Endangered Species Act. The Forest Service regulates mining on Forest Service land under various provisions of law, including the Organic Act of 1897, as well as other statutes such as the Endangered Species Act. The consultation under the ESA is required when there is, this is the key phrase in the case, is when there is agency action. Mr. Flynn, before we get to that, can I understand your position on one thing? Do you agree that under the General Mining Act of 1872, as amended, that if there were no other barring statutes, that a person who is described under the Act would have a right, a positive right, to perform the suction mining that's at issue in this case? Yes, if there are no other federal statutes. Yeah, because I realize that's the correctness of the case. Yes. But absent that, there is a right to go there, right? You don't need any permission beyond that to do so. From 1872 when the Act was passed until 1897 when the Forest Service Organic Act was established by Congress, that was the case. You needed no Federal approval, no Federal regulation. For that 30-some-odd years, that was the case. And what do you claim is the Federal action here which triggers the requirement of consultation? The Federal action is the Forest Service's review of the notice of intent that comes in that is required to be submitted by the operator. All right. So when you say review, that's sort of a vague term. An action usually is sort of an event like a letter, a decision, something of that sort. A review is a sort of long process. So what I'm actually asking you, what is the thing that triggers the event, the need for consultation, so that the moment before this thing happens, it's not necessary, and the moment after it happens, it becomes necessary? So what is that crossing point? The action is when the Forest Service decides to allow, makes a determination in Judge Paez's Siskiyou Project case. It was a final agency action which is a discretionary determination to allow the mining to occur under. Agencies don't have, unlike people, you know, when we say an agency decides, it's not a human being. It's sort of like saying a corporation decides. So if I were to say, okay, when did this happen, you wouldn't be able to sort of point to a point in time or an event. Is there such an event or a point in time? Yes, sir. It's when the Forest Service regulations, the district ranger, the Forest Service ranger, receives the NOI and then makes a determination as to whether to allow the mining to proceed or whether to impose conditions or reject that notice of intent. It's a person's decision. So there's something that happens in the office. There's no notice to anybody that it happens. It's just sort of a decision that's made internally. It's made by the Forest Service ranger, yes, through working with his or her staff. But it's communicated to the applicant. Yes. Yes, in each of the cases here, we have six to seven NOIs. Well, of course, it's communicated to the applicant, but your position is it's not the letter, it's not the communication that is the event. It is the decision itself. It's a Federal agency action. It's a decision itself. Okay. And let's say that at that point, the at some point afterwards, they begin to mine and the agency says, you know, it turns out that actually they do need to make some adjustments. They need a plan after all. What happens at that point? Well, the Forest Service, that's not on the record in this case. That never happened in this case. But in that case. Well, it's what we call a hypothetical. Right. We sort of ask questions about what if. That's right. Which are contrary to the record to sort of explore the legal landscape. So I'm not saying this did happen here. I'm just saying what happens. They make the decision. They send the letter out, yes. And afterwards, they decide, gee, we were wrong. Or, you know, the secretary that or the staff person that was supposed to send the one letter saying, A, push the wrong button, the wrong letter went out. And they determined, gee, this is really going to have an impact on the environment. The marble mural or somebody will be endangered. We really need a plan with some mitigating measures here. What happens at that point? Well, the Forest Service in that hypothetical would notify the operator that they are not protecting the environment in sufficient measures. For example, if they were. And could the operator at that point say, but no, I already have a decision from the agency which is binding, and that you can't go back without, you know, further agency procedures and judicial review. I have a right now to proceed. Too bad. I think if it was a fundamental mistake where the Forest Service didn't have the right information or something, they could go back. If it was a ministerial error, the secretary error, you know, it's a closer call. But the Forest Service does have the authority and the duty under the Organic Act and the ESA to protect species and the environment. They would go back. More often what the case is. Are they in any way bound? Can the contractor say, look, I started this work. I relied on it. There's an agency action. You can't do it just like any other agency action. I have to go through notes and comment and normal agency procedures. We're entitled to go forward until you do that. Is there anything binding? Is the agency in any way bound by that internal decision? If the agency made the decision that the NOI could proceed, let's say, 2 months ago, a year ago, then I think they would have to live by it unless there were significant or other circumstances that came up. And didn't the letter say that the authorization was good until a certain date? Right. In two of the main NOIs in this case, two of the new 49ers, the Forest Service letter actually said this authorization expires at the end of the year. That shows agency discretion. It shows agency action. I understand that, but I'm assuming that they are within that period, and your position is that they would be bound, the agency would be bound by this. If they – I think agencies, frankly, should be bound by decisions they make. And again, they made a decision here. They should be bound by that unless new circumstances arise. Well, should be, but there's – Can you say that California has put a stop to suction dredge mining? Yes. There is a temporary court injunction and a State statute that has temporarily stayed suction dredge mining in the State pending California's State environmental review regarding some of the species that are involved here. Which may or may not permit this to ever go forward? Well, that issue came up, and the majority decision below found that the case was not moved, that it certainly should come up. I'm asking you why it's not moved. I agree with Judge Smith. It was in the footnotes in his majority decision. It certainly is capable of repetition. This is coming up. The Forest Service policy has not changed. And we assume, I think Mr. Buchel for the minors may elaborate, but we assume that they will come back. I'm sorry, what is capable of repetition here? Well, both the Forest Service decisions never to consult when it reviews and approves NOIs, and then also minors submitting NOIs up on the Klamath River system, I think both of those things will happen again once the moratorium is lifted in California. If it's ever lifted. Well, it's a decision to review the environmental aspects of impacts on salmon and other species. California, it's more under their NEPA review, or it's called CEQA. Be that as it may, it may get approved or may not get approved. We don't know. We don't know, of course. But we agree with the majority decision that the case is not moved at this point. What do we do with the Forest Service? How much deference do we give to the Forest Service's own interpretation of the NOIs not being regulatory in nature? Well, the deference to the agency, the action agency here, the Forest Service, does not exist under the Endangered Species Act. They are ordered by Congress to comply with the Endangered Species Act. They do not administer it. It's administered by the Department of Commerce and Interior Department agencies. So in interpreting the key phrase here, what is an agency action, under the Endangered Species Act regulations issued by the Interior and Commerce Departments, the Forest Service does deserve no deference. And we talked about that in our reply brief. We listed the cases. Counsel, I'd like to return to the question of the effect of these letters. In addition to referring to them as authorizations, the letter specifically says you may begin your mining operations when you obtain the various permits and that the authorization is good for a certain period of time. Wouldn't the agency be bound by that? If someone obtained their permit and began their mining operation, they could rely on this, could they not? I think for the period that the approval is in existence, yes, unless something changes. You say that, but you don't have any authority for that at all. In fact, doesn't the regulation require the service, if it discovers that the plan is in fact in violation of law, they must go ahead and propose a plan at that point, send a letter saying you may not proceed without a plan. Yes, sir. That's what the letter did. There's an affirmative requirement imposed by regulation on the agency to put a stop to any activity that does not conform with the various statutes, right? Well, correct. That is what they did here. So you would then have a conflict in the regulations if you had a, if your position is right, that the agency issues this letter and is then bound by it, and yet it has an affirmative obligation to stop it if it discovers that it violates environmental laws, right? Well, they would have the discretion to step in if the operator was not conforming with the regulations. There's no discretion. There's no discretion about it. The regulation is mandatory. Well, the NOI regulation. Well, let's look at it. Do you have a regulation there? You're looking at the 2004 or the, which one are you looking at? The 36 CFR 228 regulation, sir? I was thinking of, let's see, 50 CFR 4214A. Oh, those are the Endangered Species Act regulations, yes, sir. While we're considering which regulation we're talking about, I'm interested in your perspective on what role the subjective views of either the miners or the ranger have in this. Whatever one may think of the regulations that were promulgated, you all didn't comment on them, I gather, and they became effective. And according to the Forest Service's position, they wanted to have a middle ground that would give them an opportunity to determine whether more needed to be done. This was their situation. The ranger used some language that certainly spoke of an authoritative basis. But at least as I understand it under our Sierra Club versus Babbitt, the subjective intent and the language used is really irrelevant here. There's a regulation involved. Do you agree with that? That the ranger, the terminology that the ranger uses is not binding in terms of that doesn't determine what the law means? Oh, you mean when they said that the authorization expires? Correct. Well, I think on that issue, when the agency makes a technical determination, I think there is deference given to the agency from the decision in the Lands Council case of the en banc decision. Different from the Endangered Species Act where there is no deference, but when the agency determines whether the mining is sufficient to require a plan of operations or in this case, they rejected a number of NOIs because they were inadequately protecting the species. So that is, I think and the Forest Service will admit that that is a discretionary determination they make on a case-by-case basis and that there is some deference when they talk to their biologists and their geologists and things like that. What happened here seemed to be more like imposing a plan without imposing a plan. In other words, the actual facts of this case have a set of criteria which, in fact, the miners had to meet in order to get their NOI approved. Does that seem the way the NOI structure is set? So essentially they had to submit a plan. Well, in 2003, the new 49ers submitted a plan of operations for the exact same mining operations. They then, for the 2004 season, met with the Forest Service, some representatives of the Karuk Tribe, members of the public, and the Forest Service imposed conditions and said if you want to go forward with an NOI in the next year, you're going to have to meet these conditions. Clearly, discretion, which is a big issue here. So should the consultation have been on those conditions or on an individual NOI basis, or what? Right. I think Judge Fletcher, near the end of his opinion in dissent here, talked about the various options available to the Forest Service. One was to have consultation with the Federal Wildlife Agencies at the beginning of the process to determine, you know, what endangered species conditions should protect fish on this stream or in this ecoregion or something like that. Or the other option was to consult on an individual NOI basis. I think those are sort of a way out of this conundrum. But those would be two different actions, right? In the second instance, the action would be the NOI. In the first instance, the action would be the setting of these criteria. Those could be viewed as two actions. Really, the main action we're talking about here is when the NOI is submitted and the Forest Service has to decide whether to allow the mining to proceed or not under the NOI. Mr. Flynn, how is the Forest Service's decision to not require a POO distinguishable from the BLM's decision not to regulate diversions that are less than substantial as this Court approved in Western Watersheds? Yes, there's the Western Watershed cases and another in the Sierra Clubby-Babbit and the Simpson-Timper and the other cases like that all dealt with situations where the Federal Government had no discretion. The right-of-ways and the water diversions in those Sierra Club and the Western Watershed cases were done decades earlier. The approval decision was made decades earlier, in many cases prior to the Endangered Species Act itself. So in those cases, in the cases where the Ninth Circuit has found no agency action, the Supreme Court in the Home Builders case, all hinges on whether the Federal Government had discretion to influence the private action. Western Watersheds, they said no. Home Builders, they said no. In this case, the record, I think Judge Fletcher did a great job talking about time and time there was discretion. They influenced it. They rejected NOIs and prohibited mining until the operator came out. Those were not the facts of Western Watersheds or Sierra Club or any of those cases. It's really on the discretion. My question is whether the record actually shows is that you brought the wrong case here. What you should have done is challenged the determination to have an NOI instead of a P, a plan, which I gather you could have done, because, in fact, essentially they were running it as if it was a plan but without the consultation. So it may well be that in many instances the NOI is purely what it appears to be in the regs, but in this case it really wasn't. It was really the imposition of a budget criteria with a five or six-page document that looks an awful lot like a plan. Well, we did challenge the decision as a final agency action to allow mining to go forward under the NOI. And as a prerequisite to making that decision, the agency had to consult. So in a way we are challenging the decision as an arbitrary and capricious decision  Congress said it would be an arbitrary decision to allow mining to go forward. Kennedy, you didn't do that at the time, though, did you, at the time the regulation was promulgated? Well, it was not when the regulations were promulgated in the 1970s, no. So, in other words, I just want to be sure, because I think Judge Verzon and I are on the same point here, these were final regulations that had this middle ground, and those regulations became final without your challenging them. Is that correct? Thirty years ago. Right. No, I understand the time framework. Yes, sir. So if that's the case, the position I understand you to be taking is that if a governmental agency has any discretion that that's an action, whatever they do, even if the person has the private right or in this case a public law that permits them to do something, if the agency has discretion to delay, qualify, or in any way impede that action, that is an action under the Endangered Species Act. That's your position, isn't it? Well, they certainly have discretion. They need to take an action, though, and the action is the approval of the operation allowing it to proceed. But the statute and the regulation doesn't refer to an approval. That's why I was asking you earlier about the subjective intent of the ranger here. From my perspective, he was literally off the reservation here. He was making a statement using some terminology that was not contained in the regulation, is not contemplated by the regulation. And I gather from what you've said, he's bound. The agency is bound by what a single ranger uses in a letter or says in interpreting its own regulation. Is that correct? Well, the decisions in the field are what we challenged. And so, you know, counsel, when the Forest Service is sued, can't, we all know, can't make post hoc rationalizations or say that the field officer said it wrong. You know, they're bound by what they said. The interesting thing is the decision to allow, as Judge Perry said in the Siskiyou Project case, was really the only other case we were dealing with this Forest Service NOI process. The Forest Service had challenged us saying you're not challenging an action. You're making a vague claim of an inaction. And the Ninth Circuit unanimous opinion said no, it is a final agency action that allows mining to proceed under the NOI. That's the action when the Forest Service makes the decision. So if you have an action, which they did here, they made a decision, which allows mining to go forward or not forward, they rejected some NOIs. And then you have discretion. Those are the three things you need. I think you, we disagreed, of course, with respect with your opinion. But the three questions are, is there any discretion? Is there an agency action? Is there some sort of decision going on? Yes, it's a final agency action. And then is there some sort of allowance or authorization? That's what the Siskiyou Project said. And if there wasn't an allowance or an authorization, what authority did the Forest Service have to reject NOIs and tell miners they could not operate until they came back with a resubmitted NOI or a plan of operations? So I think we have the three criteria. No authority to, like Judge Berzon, it seems as though they transformed the NOI process into a plan of operation process and didn't, by their actions, didn't conform with any of the regulations they were supposed to be conforming to. Well, they certainly didn't conform with the Endangered Species Act regulation, which required them to consult. Right. But they didn't really follow the process for the NOI, and they didn't really follow the process for the plan of operations. Well, I think Judge Fletcher had it right in his decision. He talked about how the Forest Service followed the process. They received the NOI. They analyzed it as to whether it protects. And then they reject or deny. But the regulations contemplate that an NOI is supposed to be, as I understand it, sort of name, address, and serial number. I mean, just I'm, you know, I'm doing this, I'm so-and-so, I'm going to do X at Y place, and that's it. And the notion is that if it might affect the surface, what's the word? Surface disturbance. Surface disturbance, then there's supposed to be a plan. Well, here, obviously, it might have if they had just done it that way. So therefore, there were criteria, and they then wrote a six-page letter that discussed their compliance with the criteria, and it seemed that it was, it really isn't, this was really not an exercise of the regulations the way they were written. Do you agree with that? And does that affect our decision? Should we be doing it on a fact-based way, or should we be looking at the reg when this doesn't seem to have been an expression of the reg? Well, they did receive the NOI, and they Well, they received something called an NOI, but was it an NOI the way the regs contemplated them? Well, it was a very extensive NOI, that is for sure, because in the weeks prior to that, that May of 2004, the Forest Service sat down with the miners and said, if you want to proceed on public land, you're going to have to do these things. The Forest Service I mean, have a plan, do something a certain way, not just do it. Yeah, but they, it sort of, it was sort of a middle of the road. They approved the NOI, but it was with all these conditions. You know, if I can interject here, the distinction between when an NOI is required as distinct from when a plan of operation is required is not whether there will be significant disturbance of service resources per se, it's the likelihood of such disturbance. If the planned mining, quote, might cause a significant disturbance of service resources, an NOI is required. If it will likely cause a significant disturbance, then a plan of operation is required. In either event, we're talking about significant disturbance, but just the likelihood, and the distinction between the two is very clear as to likelihood. There's no argument here, at least there's no argument here any longer, that the might cause standard for requiring an NOI satisfies the likelihood requirement of the Endangered Species Act. But I see nothing at all in these regulations that is, that's problematic with respect to whether or not they're operating properly under the NOI. The NOI says, listen, we need an NOI if might cause, and given it might cause, then they've got to consult. I don't, I confess, I don't see the problem that I hear Judge Berzon having. Right. If the operation might cause disturbance, then they have to submit an NOI. And that's when the Forest Service regulations change. But what happens if they don't? If they don't submit an NOI, the miner would be violating the regulations. Well, no, no, I understand that's the case, but I'm saying what happens? Let's say they don't submit, they just start mining. They just start. They start mining. What happens next? If it's a very de minimis, what they call casual use, which is essentially gold panning with no surface disturbance. Let's say it's not. Let's say there is surface disturbance, then they would be in trespass. We cited the Tracy case. There's some other cases. You're giving me legal conclusions. I'm asking you what happens next. What, what, what, in the physical world, what happens? In my experience, what happens is the Forest Service invokes the aid of the Department of Justice, and they bring in a trespass action against the operator for operating the plant. Don't they have to give notice and say you need to do a plan? I think to be fair to you. Aren't they required by the regulations before they take any action to notify the operator of the need to give notice and obtain and propose a plan? I, again, none of that fact situation is here, but I don't think so. A person who is bound to, you know, understand the law. Kennedy, this is hypothetical. Is that what you're doing? Sorry about that, Your Honor. You know, you've got your time running out, and if you want to waste your time on stuff like that, that's okay. I didn't mean to do that. Sorry, Your Honor. As far as I know, the Forest Service does not have to notify a trespasser by the regulations of them. They're violating Federal law. I think it's fair to the operators that they do that. In my experience, that's what they do. They notify the operator, stop now. If the operator does not stop, then the Justice Department is brought in. And we have a number of cases the last five or so years in the Federal courts, particularly the District of Oregon, where trespass convictions have been brought and sustained by the Federal courts. And the Ninth Circuit in the Tracy case affirmed. So if you're operating without complying with the regulations, you are in trespass on Federal land. If there's any surface disturbance, Forest Service regulation kicks in and you have to comply with the regulations. Mr. Flynn, if you look at the Forest Service regulations, it indicates that the purpose of the notice of intent was to simplify, allow people to gather information to avoid needless expense. If I understand your position correctly, if there's discretion and basically an interchange with the parties requiring them to do something to avoid doing the operational plan, then they have to comply with Section 7A of the Endangered Species Act, which to my mind basically does away with the whole purpose of the NOI. What further purpose does it have, if you are correct? Doesn't it automatically result in a requirement to consult under your interpretation of the NOI? If there's an agency action. And don't forget, it has to be— In this case, a ranger has an interplay with these proposed pan miners or section miners. They exchange information, they talk about where they want to go, and the forest ranger says, well, it seems to me you can avoid the problem this way, that way. You're saying that is an agency action, right? The agency action when they allow the mining to go forward. But the mining is permitted under the general mining law unless it's otherwise barred. I think that's our problem. There's no permit required unless there's another thing that says you can't do it. You seem to be taking the position that you need the authorization of the government agency here in order to mine, in this case with the section. That's not my understanding of the law. They have that right unless they have some other Federal law that interposes itself. Do I understand your position correctly that if somebody files an NOI and there's an interplay between the proposed miner and the ranger, and the ranger says, well, if you do this, you do that, then you don't have to do this, that in and of itself is an agency action? The action is when they approve it, and in that time period, they should be consulting with the Fish and Wildlife Service or NOAA Fisheries, because how does the Forest Service determine the impact on species? Congress says the overriding mission of the Forest Service should be protecting those species. They have to consult. So your answer is yes. Your answer is yes. An NOI basically is a, it's merely a precursor to a requirement to have a plan of operation. It's part of the requirement process. The NOI is submitted. The requirement process starts. As in the Six Rivers, if the NOI is deficient, the mining cannot go forward. That's what's on the record. We have a minute left. So it's dead butter. It's dead butter. Do you want to save it? Yes, I only have a minute or so left, so if I can save that. I didn't want to cut you off. No, no, that's fine. I appreciate it. Thank you very much, Your Honors. Okay. We'll hear from the other side. Good morning, Your Honors. May it please the Court. My name is Lane McFadden. I represent the United States Forest Service. I'll be sharing a portion of my time with counsel for the intervenors, New 49ers, Incorporated, Mr. Buchel. Is the case moot? No, Your Honor, we don't believe that it is. The regulations and statute still are in effect. The Forest Service might still consider whether operations in States other than California When lawyers say might, that's almost an expression of mootness right there. So, you know, you must be careful. You know, might makes it sound mighty hypothetical. Well, Your Honor. If this can't be done, if it's against a law of the State or a law of nature or something of that sort, then, you know, this is all hypothetical, isn't it? It's not in that while this form of suction dredge mining is illegal in California, I don't believe that high banking or other forms of mining which might proceed after Well, it's this particular action that's before us. We don't have before us every mining claim or every kind of mining or every operator of any mining site anywhere in the circuit. We only have one claimant for one particular operation. This is for suction mining, right? For four suction dredge operations. They're all, of course, concluded. They ended in 2004. I guess the number doesn't matter. It's all the same time frame. It's all the same time frame. It's all the same action. And it is unlawful in California, right? It is unlawful in California under State law. So no matter what the Federal Government does today, if the Federal Government today went through all the hoops and did all the things and say, okay, go ahead and do it, what could they do with that? They couldn't do anything without violating State law. If there So why isn't anything we say on that point purely hypothetical? Because the Forest Service is still engaging in, still exercising its regulatory authority in other States in this circuit and in other forms of mining besides I'm not sure that's directly responsive. Do we have a ban or do we have a moratorium in California? Well, it's a moratorium with specific conditions. That is to say, California has yet to decide what it is finally going to do with respect to suction dredge mining? I think that's a fair characterization. It sets forth conditions that could be met, and if they're met, the moratorium will be lifted. So there's Why, just because I'm confused about this, does California get to say what happens on United States Forest Service land with regard to dredging? Well, Your Honor, it's a fair question. I, as one, I'm actually not particularly well versed in, but it has been for many years, at least since Granite Rock, the case that the State has concurrent jurisdiction over these activities and that it can impose further actions in the streams of the State or in the waters of the State. Can the State say there's going to be a moratorium on this dredge mining and the Forest Service say, no, you can go ahead if you provide a plan of operation? If the Forest Service receives a notice of intent or a plan today in California, it will review that and will say, as far as Federal law is concerned, here are the restrictions or there are no restrictions or what have you. And then the miner is liable for all sorts of kinds of mistakes. The executive branch can do all sorts of moot things or unripe things, right? Yes. It has, just like the legislation, they're not bound by Article 3 or a case in controversy requirements. They can give advisory opinions, right? Right. They can give medals to people for valor, all sorts of stuff they can do that we can't do. So that doesn't really answer the question of whether or not we have a live controversy here. I mean, so long as these folks can't do anything now and there's no foreseeable time frame within which they could do it, I don't see how we have a controversy. I mean, persuade me. I mean, I'm just not getting it. You may be right. We didn't make a mootness argument. I'm not going to work terribly hard for the people of other countries. Whether you did or not, of course, doesn't matter, right? It's a case, it's a question of judicial power. And if we suddenly notice, it's sort of like one of those cartoon characters. As soon as you notice that you're over a cliff, you drop, right? Well, your co-party made a mootness argument. To be sure. This Court's normal mootness law, which applies to the types of seasonal permits it issued before this case, says that the permit has expired at the end of one season, doesn't automatically move the case if Federal agencies might issue future permits in future seasons. This case may very well be distinguishable in that there is a State law moratorium which lays on top of this, which means that there's no permits going forward, there are no permits. I'm sorry. What did you say? Justice Sotomayor, the answer to my earlier question is that there is no doubt that California, I mean, were you saying you didn't know whether California really could regulate this, or it's accepted and then the Federal law that they can. Justice Kagan, no dispute, that California may impose these permit requirements. All right. Okay. Let's be sure we're all on the same page. As I understand it, and I'm quoting from footnote 10 of the earlier opinion, the California Senate Bill Number 670, which amended the California Fish and Game Code, Section 5653, required by a new section that an environmental impact report had to be prepared prior to the issuance of a section dredging permit. Now, that doesn't prohibit that from happening. It says there's a condition precedent to its happening. So if that were issued, suction drying, mining could occur, and then we would have the problem that is before us, right? Yes, Your Honor, although that law has now been superseded by new California legislation, which says that not only need that environmental impact report come out, but other conditions must be met. And it says also, doesn't it, that until those things are met, any vacuum or suction dredge equipment is prohibited? Correct. What are the conditions, just in general terms? What kinds of conditions are they? I believe there's a condition that the relevant State agency must certify that the fees will cover all costs imposed on the State by these operations. There's a condition that all impacts considered by the environmental impact report be fully mitigated. I'm not sure if there's a certification requirement about that, but those are the conditions. All right. So is something rendered moot because if there's a condition that may never be satisfied, that's the end of it? Is that what the law is? Generally, no, Your Honor. If it is temporary, even if only in theory, the courts have held that that is the best practically speaking, it may never happen, that doesn't moot this case, does it? No, because we don't view this as a case where it will practically never happen. It's delayed. And the case gets mooted. Then the district court opinion goes away. Of course, the earlier opinion goes away, and we have no new opinion, which would basically leave the regulation in effect, and everything would be copacetic, right? Correct. Perhaps a felicitous result. Maybe it should be moot. Indeed. Mr. Let's assume that your case is not, that the case is not moot. Why isn't it on this record, the NOIs in this case that we, that Judge Brezon was mentioning, and Judge Fletcher, why doesn't that show that there was agency action in the approval of these NOIs? Well, setting aside the phrase that they were approved, which gets to the agency's regulatory authority, which is the underpinning question in this case, that the district ranger decided he wouldn't require a plan of operations is, as this Court has previously held, a final agency action. But he first said a whole bunch of conditions. Right. And those conditions, and then reviewed it for those conditions. And so it doesn't, it seems that in this case, whatever may be true with regard to NOIs generally, that clearly there was an agency action, was there not? Because he basically said, he interpreted the authority, whether rightly or wrongly, as giving him the authority to say, unless you do it, you X, Y, and Z, I'm not going to let you do this mining, and then they did X, Y, and Z, or they didn't in some of the other cases in the record, and that determined whether they could do it. So there was a discretionary and specific determination made. No, Your Honor, that the, he imposed criteria for whether the, it was likely to cause a significant disturbance, only served to trigger the plan of operations requirement. And if that requirement had been triggered, as in many cases it is, then the Forest Service has regulatory authority to impose further restrictions and to take all sorts of steps. And what is the difference between what he did without consulting with what he would have done if he had consulted and called it a plan instead? That's the difference. Had he said a plan of operations will be required, he would have consulted. NEPA would have applied. Kagan. But I'm asking you as a functional matter, isn't it exactly, didn't he do exactly that, but not consult? No, Your Honor, because had a plan been developed, the Forest Service has the affirmative authority. It can prohibit operating until the plan is approved, and it can impose all kinds of restrictions or mitigation. But he did that. He essentially prohibited mining unless you could conform to a set of criteria. Well, Your Honor, that, phrased that way is a misstatement of the district ranger's regulatory authority. But it was exactly what he did. It was what he actually did. That's just how he phrased it. Well, yes. But the question before this Court is whether 16 U.S.C. 1536, which says that the agency action is authorized by the Forest Service, applies to what he did. And even saying it would. Are you arguing that your Forest Service people were violating their own regulations? No, Your Honor. I've never seen such an argument. No. And what they've done on the ground here is they've approved some of the NOIs and they've disapproved some others. They've set criteria under which they will or will not be allowed to go forward. I don't understand the argument. And I also want to ask you, when this suit started and in the other Siskiyou suit, your position was there was no consultation required even for a plan of operations. Correct? That's correct. So now you're driven back to, well, okay, maybe we have to have a consultation when it will likely cause surface disturbance. But now when it only might cause, we don't have to have consultation. But, of course, the might cause triggering for NOI is almost identical to the triggering condition for a consultation under the Endangered Species Act. I don't understand your position when we see on the ground the district rangers saying yes or no, allowing or not allowing it under the NOIs, and you're not saying that they were violating Forest Service regulations in saying yes or no. It seems to me that they've taken an action. Well, Your Honor, this case, again, has to return back to the statutory interpretation question. I'm not arguing the district ranger was inconsistent with Part 228. What I'm saying is that what actions he took, what he did in sending the letter and in notifying them that a plan of operations was not required, was not an authorization of their mining action. Can he change his mind? If he floats down the river, sees the operation, and sees what he believes likely causes a significant disturbance of surface resources, yes, he can at that point shut it down. So he makes a prediction. He makes a prediction that they're not going to take any action, and then he goes and actually sees the operation and says, oops, we were wrong. He can require a plan at that point. But the regulations authorizing it is always a plan. Is he bound in any way by the early determination? Does he have to take formal action to undo the early determination? I don't know. It's an open question. If what he witnesses on the ground is identical to the operations described in the notice of intent, there's no change and no change in circumstances, we'd say he's bound. Kennedy, let's say it's a different ranger, you know, it's a new man on the job and he takes another look at it or he looks at it and he says, oh, you know, it actually I sort of misunderstood, so this is exactly what it was, but I now realize, or maybe he just takes another look and says, you know, oh, God, you know, we just made a mistake here. The regulations authorize him to stop them at that point, prohibit operations and say. Require him to stop it, right? I have a practical question here. Let's say I'm the recipient of this letter that says from the district ranger, I have determined that your proposed operations would not require a plan of operations. You may begin your mining operations when you obtain the permits. This authorization expires on such and such a date. With that letter in hand, if I do what was described in the notice of intent and I get those permits and it's before that expiration date of the authorization, can I not rely on that to actually go do that mining, and can't I enforce that? There very well might be reliance, yes, you could have you might challenge an administrative proceeding if the agency changes its mind. You can rely on it for sure to the extent that they can bring a trespass action if you're doing it, right? Right, absolutely. But I was I was asking a slightly different question. Let's say we let you do this. We have now changed our minds and we now have determined that despite what we said earlier, you in fact need a plan of operations. Right. Within the confines of partnership. Is there some sort of entitlement to say no, I have a letter and I am entitled to go forward? No, because that's not the way the regulations are set up. The regulations say that the Forest Service only authorizes or approves operations which are likely to cause a significant disturbance of surface resources, and they don't restrict the Forest Service in its making of that determination. It can make that determination in response to a notice of intent. It can make it sui sponte if you go out on the forest and sign for someone operating that you didn't know was there. But the regulation, at least as it was in effect in 2004, required a response to a notice of intent within 15 days, either up or down. It required a decision in 15 days. It required notification of the operator, a decision and notification of the operator. It says that the district ranger will within 15 days of receipt thereof, meaning the notice of intent, notify the operator whether a plan of operations is required. So why doesn't that requirement to give a thumbs up or thumbs down make the thumbs up or thumbs down an agency action? It makes it a final agency action for purposes of the Administrative Procedure Act. And if the district ranger says I'm going to require a plan of operations, you can say it. So why isn't it simply a guess or a prediction as to what is likely to be their reaction if you go ahead and have the operation? It says, you know, we don't plan to take any action. You can go ahead and do this. And not binding on the agency, if they later determine, gee, we made a mistake or things look different or whatever, they can still require a permit, right? Yes. That's why I said it's a final agency action when the agency says a plan is required. It goes through the plan approval process. Kennedy, I see where the plan is required. I misunderstood. Kennedy, I have trouble understanding why we are spending so much time on the hypothetical. There is nothing in the record that suggests that this has happened. Is there anything outside the record of which you are aware in which the Forest Service has changed its mind, having authorized an NOI for a specified period? I don't know of a single example, Your Honor. Well, the reason, of course, it matters is because if it's a permit, if it really is a true determination by the agency which you are entitled to rely on, then it's more likely to be an agency action for purposes of the consultation requirement. If it's simply a prediction, if it's simply saying, well, right now we don't plan to move against you and require a plan, then it's not. That's right. And the other aspect of the ESA's agency action requirement, which is different from that in NEPA or in the Administrative Procedure Act, is that the action itself, the private activity of mining, must be authorized, funded, or carried out by the Forest Service. And so the issue is whether, by what right, they are on the forest system lands engaging in any mining operation without a plan of operations. And that authority for these particular suction treasuries is the same as it is for a gold panner or someone engaged in de minimis activities. But at a minimum, we have, as soon as an NOI is approved, is that the person who has gotten approval is that, absent further action by the Forest Service, you are allowed to rely on our approval and to go forward and do it. Now, the circumstances under which the Forest Service may decide to change its mind, either because there's been a factual misrepresentation in the NOI itself or because of some changed conditions in the river that all of a sudden, whereas earlier it only might have caused, now might likely, which moves it up to a, that's a different question. But absent changed circumstances, it seems to me that the NOI and the approval is good. Gershengorn Absent changed circumstances, right, they could proceed as they could before. Kennedy Because it gives you anything else other than a defense to a trespass action? Does that letter give you anything else other than saying, look, you can't prosecute me for trespass because I have a letter? Does it give you anything more than that? Gershengorn Off the top of my head, no, because the agency still has the obligation to impose the plan approval requirements. Kagan But you seem to be saying two different things. At some points you're saying that there could be a determination of acquiring a plan if there's a change, and at other points you seem to be saying even if there's not a change, if they just wander in one day and say, now we do want a plan of operations. And which one is it? Gershengorn It's certainly the former. The latter hasn't come up. Kagan Yes, certainly the former. But Judge Kuczynski is asking you about the latter. Gershengorn Right. Kagan And you seem to be equivocating at best and, to my mind, saying it has to be a change. You can't just go change your mind. Gershengorn I'm sorry. Since it's not a circumstance that's arisen, it's not something we've considered. The regulations, as written, though, do impose that requirement on the ranger. They don't restrict. Sotomayor How does that interpretation of the regulations square with what I read earlier, that if you file the notice of intent, you must be notified within 15 days whether or not you will have a plan of operations? That seems to be a requirement to make the decision at the front end, period. I just, I don't see in the, how that's, what you're saying now is consistent with that requirement in the 2004 version, which was what applied to the case in front of us. Gershengorn Well, I think it's important to get back to what that letter stands for. Whether or not the agency changes its mind, the moment that you get that letter, you're, you then know that the agency. Sotomayor You have a license to perceive. Gershengorn And you can perceive, and that the Forest Service will not impose its regulatory apparatus on you. The Forest Service has a great deal of power to control. Sotomayor Okay. So it will not, and therefore, unless something changes, it will not. Gershengorn Right. Okay. Let's say that in the event that nothing has changed, the Forest Service wouldn't change its mind. Kagan So how often is it that recreational miners, such as the New 49ers, actually are required to go through the plan of operations process? Gershengorn Well, operation, like suction dredge mining, for example, typically does require a plan of operations. And you can see, you don't have, we don't have the number. Sotomayor So isn't your Forest Service district manager substituting this sort of quasi-informal process for the plan of operations process? Gershengorn No, Your Honor, because again, all that the criteria he developed or that another district ranger might develop does is say that if this criteria is satisfied, then we're going to require a plan of operations. And that comes with it, not just the requirement you satisfy those criteria, but a whole host of other environmental law requirements. Otherwise ---- Ginsburg Right, but as a practical matter, that's what he did here, right? Didn't he impose his own plan, his own device plan? Gershengorn He didn't impose a plan. He defined significant, as it appears in the regulation, if anyone, including the plaintiffs in this case had an, or the miners, had an objection to this criteria they could have challenged, but of course, they're presumed, they're presumed okay. Also, they were demonstrated effective, and there's nothing to suggest that any harm came to the CC. Kagan It's not the question of the substance of the requirements. It's that the requirements were, it is essentially a backdooring of the system, because he did this by consulting internally with two people, internally, biologists, and he came up with substantive criteria, which it appears the whole ESA system means to be done by external consulting and the formal promulgation of criteria. So you have something that is fulfilling the same purposes, but not in the way the ESA contemplates, and the question is why, by doing that, isn't he necessarily taking an action that triggers the ESA? He's not, Your Honor, because if he gets a notice of intent and says you don't satisfy the criteria, you're going to require a plan of operations, then that's all settled. If he says, this notice of intent doesn't contain enough information, I'm not making my decision, send me another one, then there is nothing in the regulation that prohibits mining operations. The mining operations are only prohibited if they are determined to be, to likely cause a significant disturbance to service resources. And that sounds strange, because there is a determination that has to be made up front, which is different than a lot of regulations. Most work the opposite, where you don't engage in any activity until you get prior approval from the Forest Service. Scalia. Do you want to save time? Yes, Your Honor. I have allocated the rest of my time to counsel. Kennedy. But before you go, I just want to get the government's perspective on this. You've heard, of course, heard the perspective of colleagues here, and it just seems to me what you just said confirms at least what the other side was saying, which is that by virtue of the forest ranger having to make a determination under an NOI whether a plan of operation is necessary, that whichever way he or she goes, that's an agency action. And therefore, the NOI category disappears. It becomes a nullity. Do you agree with that? No, I don't, and I'm sorry if I suggested that. Tell me why. There's two scenarios. The first, of course, is that he decides discretionarily that a plan of operations is required, then that is an agency action under the APA. It is also an action authorizing mining under the ESA and consultation is required. If the opposite happens, you have the same situation as in Western Watersheds v. Matejko or California sport fishing. The agency says, I get to make a discretionary decision about whether to impose regulatory restrictions. I have decided not to do so. I'm not taking an action. And that is not an agency action for purposes of the Endangered Species Act, which is the sole question presented at this Court today. And I yield the rest of my time to the interveners. Roberts. Good morning, Your Honor. James Buechel representing the real parties in interest. The present Regulation 228.42a2 says that the district rangers will within 15 days notify the operator if approval of the operations is required before operations may begin. It used to say whether or not, and the commentary describing this said that there was intended to be no change in meaning with the streamlined wording of this section. Exactly. So it means whether or not a plan of operations is required, thumbs up or thumbs down, they have to be notified within 15 days. And if there is no plan of operations, they are licensed to mine, are they not? I would argue that there is a hundred years of practice that says you're the miner, it's your private property, you go out and mine unless they stop you. At this point, the regulations were created. The legislative history is perfectly clear. Congress would not permit the Forest Service to require advanced approval before the mining starts. That is the area on which to focus, is was there any approval required before the mining could start. There is nothing in these regulations as presently constituted, as constituted in 2004. But if your clients had not submitted this rather complicated, something that looks like a plan, they presumably could not have mined, and they went and they they're I'm sorry, you don't need to look at me that way. Well, did you say if they hadn't submitted, they couldn't have mined, is that what you meant to say? If they had submitted something that was, did not contain a promise to comply with a lengthy set of conditions, they could not have mined, is that right? No. They would have been free to go mining up until the moment where the ranger said stop, pursuant to this regulation. That's the whole design of the regulations. That's the way it's always worked. That's the plain language of the regulations. Kennedy, what if they had not submitted anything? They just started mining. Let's say they had, they were required to do it, but they didn't do it, and all of a sudden the ranger is going down the river and he sees them doing this. What happens next? 228.A4.4A4. If the district ranger determines that there's a likely disturbance, the district ranger shall notify that the operations cannot be conducted without a plan, submit one. So opposing counsel asked him the question, and he seemed to say that they could get prosecuted for trespass right there. Trespass is ridiculous, because this is private property. They're on their own private property. That makes no sense at all, with all due respect, Your Honor. That's just wrong, and that's covered in the briefing. They can get prosecuted for something. Yeah. They have violated this regulation, because the regulation subsection 3 says operators shall submit in any case where it's likely to cause. If somebody comes along and says this is likely to cause, they are in violation for having failed to submit a plan. So if they don't submit an NOI, that's fine? If they don't submit an NOI, that's fine, unless and until somebody tells them that they can't do what they're doing. The whole purpose of the NOI was simply to give the Forest Service the notice that, hey, somebody's out there, maybe we should take a look and see if this is something that has to be stopped. So your position is if they don't submit their NOI, unless they should have submitted a plan, it's fine, so the NOIA thing, the whole NOIA requirement has no teeth at all? It has teeth in the sense that they are required to submit one under this microcode. Fine, and if they don't? And if they don't, the Forest Service's remedy is the same. Go out there and look at it, wait a minute, you know, you violated the statute by you violated the regulation by not submitting an NOI, you violated the regulation by not submitting a POO, whatever the appropriate. Suppose you violated the statute by not submitting an NOI, then what? It depends on what's going on on the ground. Well, I'm asking you, what, I don't understand that. Suppose you should have submitted a NOI and you didn't submit a NOI, but it's fine to continue mining. That's your position. They could be cited for failing to submit an NOI, if it's at that level of significance. They could be cited for failing to submit a plan. They would be in violation, but they have a private property right pursuant to which they are allowed to mine. It's really that simple. Let me ask you something to follow up. So after the New 49ers' NOI was rejected, why did the New 49ers withdraw their NOI? Because they didn't want to get cited. So after that point, after their NOI was rejected, they decided not to mine? Yes. That's a voluntary decision to not risk a citation. Why would they decide not to mine if they, when their NOI was rejected, if that wasn't some form of approval process that was required? Because it's like a prosecution or something. It's like advice from the government. You go and you say, I'm going to do this, and if you're going to do this, is this going to be a problem? No, it's not going to be a problem. Cited means what? Cited means you have a fine or what's decided? There would be a misdemeanor violation. What's the authority for that? 261.10 sub e, maybe. I mean, one of the things that concerns me about this argument, we haven't briefed any of these questions. And this whole business about how people could rely on some letter that some ranger said that I authorized this and you can rely on it, I've litigated against the government my entire life. And one thing I know pretty well is you can't rely on anything a government official says. Let me ask you this. You argued in the brief that the case is moot, is that right? Yeah, I did. Is it still moot? It's been moot since the day California outlawed suction dredge mining. It's a moratorium. Is it your view that that's going to be a permanent moratorium? What's the evidence that that moratorium is permanent and not just temporary? This Court can take judicial notice of the current moratorium, which is AB-120, and I can pass up a copy if you want. It says that the thing will be in moratorium until June 30th, 2016. I mean, one of the problems with this case is let me just read you one little quote from the record here. And this is from this ranger who's now under this attempt to Could I, I want to follow up on this mootness question before you slide off into something else. There, the two points have been made. One is that there's a request for declaratory relief here, and the second is that even though there's a moratorium, this process is capable of repetition, but potentially evading review in that the requested injunction is broader than dredge mining. It has to do with the, with any NOI process under this regulation. There's two ways. What's your response to that? There's two ways of looking at this. If we stand abstract away from all the facts of the case and we look at the current regulations, and this Court could issue an advisory opinion on whether in the abstract these current regulations are such that every time a hapless miner sends an NOI, it triggers a section 7 process, that is indeed something that may occur in the future. But we have a situation where the record before this Court is, has fundamentally changed in at least two respects. The law has changed and the facts have changed. And what I was going to do is, is, as I was also going to say, that the record is also woefully incomplete, and both the district court and the panel decision did not let in the full, full stuff in the record. What this ranger said in his notes are, quote, "...there are at least three State of California Department of Fish and Game EIRs that tie to the dredge permit and indicate there's no significant disturbance if the permit stipulations are followed." Sotomayor, M.E.R. 11. And what this means is we have a comprehensive State regulatory scheme. It classifies every single stream and river in California. It says how big of a dredge you can use. It says whether you can move rocks around. It says what time of year you can dredge. This whole thing runs under a scheme such that the miners are not allowed in the river when there's any chance that they would adversely affect the fish. And there's all these EIRs. And then there's a State EIR with those regulations. There is a biological assessment done by the Klamath Forest pursuant to the endangered species. Kennedy, Mr. Bucco, the Ninth Circuit, as I recall, covers nine western states and the Mariana Islands and Guam. We're talking about California here in your case. What about the other states? Is it moved there? I would freely admit that some of the states have been moved. Does the regulation apply in other states? Certainly. And there's a question. Then it's not moved, is it? My understanding of the way Federal court jurisdiction works is that the case or controversy itself, these particular four replies and the consequences from them, that has to be something that the court can grant effective relief in that area unless there's an exception. The fact that the regulation is being applied elsewhere, oh, and this business that the Forest Service says about how typically these things require a plan of operation, that's completely untrue. I'm from Oregon. Up in Oregon there's a comprehensive State system there, too. And if you follow your State permit, there's no plan of operations that's required. But I digress. What I'm trying to get back to is that we have an extensive record here of Federal environmental studies, State environmental studies, and the Ranger Acts in that universe. And that whole universe is going to change if in the year 2016 this moratorium is ever lifted. And I don't think it will, because his clients apparently own the legislature and they just keep passing moratorium after moratorium. But if it ever ended, if it ever ended, then there would be a whole new set of regulations. And those new regulations will be incredibly more stringent. We've seen some we've seen some drafts. And so we'll have an entirely different set of factual circumstances. Kennedy. You've got a minute. Oh, I have a minute? No, not. The other guy. It was. Well, the better part of a minute anyway. Thank you, Your Honor. Just a couple of questions. I think Judge Graber had it exactly right. The thumbs-up, thumbs-down decision is a Federal agency action. And it's not just the decision to acquire a plan. The SISC-UK says the decision to allow mining to proceed under the NOI is also a Federal agency action. It's the action they take. They've rejected some. They've conditioned some. It's a Federal agency action. If there was, as you noted at the end of Judge Fischer's dissent, a discussion of what consultation means. But it would be helpful to me to know, if we agreed with you, what would happen? What would they have to have a biological opinion on every one of these NOI decisions or what? Well, don't forget, it would only apply consultation when it is may affect. Most operations in the West are not endangered species within 100 miles. You could either have consultation up front in a watershed, or you could do it on an individual basis when the NOI came in. Once the NOI comes in, the Forest Service then has the authority to condition or reject. My last, I just wanted to. I'm sorry, I don't understand. You didn't answer my question. Oh, I'm sorry. So the consultation, but I gather there's a whole slew of informal means of consultation which are fairly quick and not complex, is that right? Or are you talking about a complete biological opinion on each one of these? Well, there's a may affect determination, which everyone agrees is the case here with section dredging. Then formal consultation with the biological opinion that there's many cases in the That's the next level up on consultation. That hasn't occurred here, because we just, there's never been any consultation, so we don't know. But it could be informal consultation on a may affect decision. It could be formal consultation. And informal consultation means conversations or what? Usually it's about, in my experience, it's back and forth letters between the action agency and the Fish and Wildlife Service or NOAA Fisheries. And oftentimes in the astronomical percentage, the operation is allowed to proceed with some conditions that the expert wildlife agencies that Congress entrusted give that recommendation or advice to the thing. Thank you. Thank you very much, Your Honor. Case is argued and stand submitted. Roger.
judges: Kozinski, Silverman, Graber, Wardlaw, Fletcher, Gould, Paez, Berzon, Smith, Ikuta, Murguia